1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTOR CATALA, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>RESURGENT CAPITAL SERVICES L.P. and PLAINS COMMERCE BANK, )<br><br>Defendants. ) | Civil No.08cv2401 NLS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR APPROVAL OF INCENTIVE PAYMENTS TO PLAINTIFF [Doc. No. 35];**<br><br>**(2) GRANTING MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS [Doc. No. 36]; and**<br><br>**(3) DIRECTING ENTRY OF FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE.** |

Plaintiff Victor Catala, individually and on behalf of all others similarly situated (Catala or Plaintiff), filed two motions seeking (1) final approval of a class action settlement and approval of incentive payments to Plaintiff; and (2) and an award of attorney's fees and costs. Defendants Resurgent Capital Services L.P. (Resurgent ) and Plains Commerce Bank (Plains) (collectively, Defendants) do not oppose the motions. This court has already granted preliminary approval of the settlement.

With no objections having been filed, pursuant to Civil Local Rule 7.1.d.1 the court decides these motions on the papers and without oral argument. This court has reviewed all papers filed in support of the motions and for the reasons set forth below, **GRANTS** the motion for final approval of

08CV2401 NLS

1    settlement and approval of incentive payments and **GRANTS** the motion for attorney's fees and costs.

2                                          RELEVANT FACTS

3           Catala is a consumer allegedly delinquent and owing consumer debts.  Resurgent is a limited

4    partnership that attempted to collect debts from Catala.  Catala alleges that in attempting to collect debts

5    from him, Resurgent sent an envelope and/or collection letter that said "you are pre-approved for a new

6    visa credit card" and that "arrangements have been made for you to obtain a pre-approved visa credit

7    card issued through Plains Commerce Bank."  Plains is allegedly the bank that underwrote new

8    extensions for credit for any Resurgent accounts.

9           Catala filed a complaint against Resurgent and Plains on December 24, 2008, alleging that this

10   mailing violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (FDCPA) and the

11   California Fair Debt Collection Practices Act, California Civil Code § 1788 et seq. (Rosenthal Act).

12   Resurgent and Plains deny the allegations and argue that if any violation occurred, it resulted from an

13   unintentional and bona fide error, notwithstanding the maintenance of procedures formulated to avoid

14   the violation.  Plains also argues that it is not a debt collector under the FDCPA or Rosenthal Act.

15          The court held a telephonic conference and then issued the Scheduling Order in this matter on

16   May 18, 2009.  As of July 22, 2009, the parties were engaged in settlement negotiations and requested to

17   continue the class certification motion and expert designation deadlines.  On September 21, 2009, the

18   parties notified the court that they had agreed to settle the case.

19          On October 19, 2009 Catala and Resurgent filed a joint motion for preliminary approval of class

20   action settlement.  The court denied the joint motion without prejudice.  The parties later filed a renewed

21   joint motion, and on January 29, 2010, the court granted it and certified the class for settlement purposes

22   only, preliminarily approved the settlement, class counsel and the class representative, and ordered that

23   the notice be made to the class members.

24          The parties settled the case pursuant to these terms:

25          A.      Defendant shall pay to San Diego County Legal Aid Society, through
                    Plaintiff's counsel, as a *cy pres* distribution on behalf of the Class the total
26                  sum of $35,000, which is $10,000 more than 1% of Resurgent's net worth,
                    the maximum amount of damages allowed in an FDCPA class action
27                  under 15 U.S.C. §1692K(a)(2)(B).

28          B.      Defendant will pay Plaintiff as an incentive payment $2,500, subject to
                    Court approval, for his efforts in litigating this action.

C.   Defendants shall be responsible for, and shall bear the costs of, class notice by publication. Defendants shall also pay up to $5,000 to Gilardi & Company LLC, a third-party administrator, for settlement administration services performed by Gilardi pursuant to its separate agreement with Class Counsel.

D.   Subject to approval of the Court, Defendant has agreed to pay to Class Counsel attorneys' fees and expenses not to exceed $35,000.

The conditional class covered by the settlement includes:

All individuals in the State of California, during the Class Period, who were sent an envelope by Resurgent Capital Services, L.P. that was light blue in color, bearing white clouds as a design, a stamp that indicated it was "PRESORTED FIRST CLASS MAIL," and/or the words "IMMEDIATE REPLY REQUESTED," and/or were sent a collection letter from Resurgent Capital Services, L.P. bearing the representations "YOU ARE PRE-APPROVED* FOR A NEW VISA® CREDIT CARD" and "Arrangements have been made for you to obtain a Pre-Approved* Visa credit card issued through Plains Commerce Bank."

The class period is from December 4, 2007 to December 24, 2008.  The class includes 195,561 potential class members.

On March 15, 2010, Gilardi & Company (Gilardi), the settlement administrator, caused the court-approved notice to be published in the San Francisco and Los Angeles Print Market editions of the USA Today newspaper.  Vasquez Decl. ¶ 2, Ex. A [Dkt. No. 34].

## DISCUSSION

### A.   Approval of Class Action Settlement.

Settlement of a class action lawsuit requires court approval. *See* Fed.R.Civ.P. 23(3).  The court must find that the proposed settlement is fundamentally fair, adequate, and reasonable.  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir. 1998)).   In making that determination the court can consider:

[1] the strength of plaintiffs' case;
[2] the risk, expense, complexity and likely duration of further litigation;
[3] the risk of maintaining class action status throughout the trial;
[4] the amount offered in settlement;
[5] the extent of discovery completed, and the stage of the proceedings;
[6] the experience and views of counsel . . .; and
[7] the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citation omitted).  This is not an exclusive list and some factors may predominate over others, depending on the relevant facts.

1     *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

2         The court must be particularly vigilant where, as in this case, the parties agree to settle prior to

3 class certification. *Hanlon*, 150 F.3d at 1026. The court, however, must likewise take into account the

4 Ninth Circuit's policy favoring settlement, particularly in class action cases. *See Officers*, 688 F.2d at

5 625. While balancing these factors, the court is to satisfy itself that the settlement is not a product of

6 collusion between the parties. *Id.* In evaluating the settlement, the court is not to reach the merits of the

7 case or to form conclusions about the underlying questions of law or fact. *See id.*

8                 **1.**      **The Strength of Plaintiff's Case**.

9         "Regardless of the strength of case counsel might present at trial, victory in litigation is never

10 guaranteed." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D. N.J. 2002). Here, in the

11 settlement the Plaintiff class will have obtained more than all it could obtain had the case gone to trial,

12 which is 1% of Resurgent's net worth. In light of the asserted defenses and the uncertainties Plaintiff

13 would have faced to establish liability and a full recovery, the court finds that the strength of Plaintiff's

14 case weighs in favor of resolution of this action by settlement.

15                 **2.**      **The Risk of Continued Litigation.**

16         The risk, cost, complexity, and possible duration of litigation play into determining the

17 reasonableness of a settlement. *Torrisi*, 8 F.3d at 1376. "In most situations, unless the settlement is

18 clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

19 uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.

20 2004) (internal quotations omitted).

21         Plaintiff faced substantial risks in establishing liability, causation, and damages. If litigation

22 continued, the parties would have continued with discovery. Discovery could have caused additional

23 delays and complexities due to the possibility of disputes and obtaining discovery from class members,

24 Defendants and experts. Litigation would have also included a possible summary judgment motion, trial

25 preparation, trial and post-trial motions, and appeals. The litigation would have significantly delayed

26 any recovery to the settlement class. Against these uncertainties and delays, an immediate and certain

27 award for 100% of the potential recovery favors settlement of this action.

28 / / /

### 3.    Risk of Maintaining Class Action Status Through Trial.

The court approved class action status for only settlement purposes.  If the case had not settled, Defendants would have opposed Plaintiff's motion for class certification.  Even if the class had been certified, courts may re-evaluate the appropriateness of class certification at any time.  Fed. R. Civ. P.23(c)(1)(c).  However, "the possible risk of decertification does not prevent the Court from granting final approval to the Settlement."  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *36 (C.D. Cal. 2005).  The avoidance of risk of maintaining class action certification throughout trial favors settlement of this action.

### 4.    Amount of the Settlement.

The adequacy of a settlement must be judged in the context of "'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers*, 688 F.2d at 624.  The settlement agreement embodies a compromise, where one party gives up something they might have won through a trial in exchange for saving cost and eliminating risk.  *Id.*

Under the FDCPA, at most Plaintiff could recover 1% of Resurgent's net worth, or $28,850.  Under the Settlement Agreement, the parties agree that Defendants shall pay to San Diego County Legal Aid Society a *cy pres* distribution of $35,000 on behalf of the Class.  Here, Plaintiff obtained approximately 1% of Resurgent's net worth, plus an additional $10,000 on behalf of Plains.  Therefore, Plaintiff could not have achieved a more favorable result.  While both sides may have asserted compelling arguments at trial, by way of this settlement, the class can avoid the cost and risk of litigation while recovering all of their potential damages.

The court recognizes that the settlement will not result in payment of any money to individual class members, other than to lead Plaintiff.  Under the FDCPA, the amount a class can recover cannot exceed the lesser of $500,000 or 1 percent of the net worth of the debt collector.  15 U.S.C. § 1692k(a)(2)(B).  Given that the class size is 195,561 persons, and Resurgent's net worth of $2,585,000, the most an individual class member could recover from Resurgent would be approximately 13 cents.[1]

*Cy pres* distribution is acceptable where notice is provided to each class member and individual

---

[1]$2,585,000 x 1% = $28,850. $28,850 - $2,500 (for Lead Plaintiff) = $26,350. $26,350 / 195,561 Class Members = 13.47 cents.

damages are calculated. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Plaintiffs cannot use *cy pres* "recovery to avoid the difficulty of proving each class members' specific injury." *Id.*; *see In re Hotel Telephone Charges*, 500 F.2d 86, 89-90 (9th Cir. 1974). Further, *cy pres* distribution is appropriate where distribution to individual class members is impracticable:

> When a class action involves a large number of class members but only a small individual recovery, the cost of separately proving and distributing each class member's damages may so outweigh the potential recovery that the class action becomes unfeasible. Fluid recovery or "cy pres" distribution avoids these difficulties by permitting aggregate calculation of damages, the use of summary claim procedures, and distribution of unclaimed funds to indirectly benefit the entire class. Federal courts have frequently approved this remedy in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly.

*Six Mexican Workers*, 904 F.2d at 1305(internal citations omitted).

Here, the de minimus recovery of approximately 13 cents per class member would make distribution to class members impracticable because of the burden and expense of distribution. This court finds the proposed amount of settlement is fair and reasonable, and is a factor that weighs in favor of settlement.

### 5.    Extent of Discovery.

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quotations omitted).

Plaintiff conducted written discovery of both Defendants concerning class allegations and merits. Through this discovery Plaintiff learned that Resurgent was a debt collector as defined under both acts and that Plains was not. Plaintiff also learned that no financial or account information was shared between the Defendants in this process, as Plains underwrote the available credit cards without first having each consumer's financial information disclosed. Through discovery, the parties also determined that as of May 31, 2009, Resurgent had a net worth of $2,585,000. The court is satisfied that class counsel sufficiently familiarized themselves with the facts and merits of this case such that they could make an informed decision regarding the merits of settlement, and this factor weighs in favor of settlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 6.     Experience of Counsel.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 528.

The court finds that both counsel have substantial experience in working on class actions.  *See* Swigart Decl.  In an effort to avoid further litigation and to resolve the matter amicably, counsel for both sides engaged in settlement discussions and negotiated an agreement.  Counsel have weighed the strengths and weaknesses of their respective positions and they endorse this settlement.  Their recommendation is entitled to significant weight, and weighs in favor of settlement.

### 7.     Reaction of the Plaintiff Class.

The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the settlement are favorable to the class members.  *Omnivision Tech.*, 559 F.Supp. 2d at 1043 (quoting *Nat'l Rural Telecomms.*, 221 F.R.D. at 529); *see Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976, *24 (W.D. Wash. 2001) (finding approval of class supported a finding of fairness where with 37,000 notices sent out less than 1% of class opted out and only 9 potential claimants objected).

Here, notice was published on March 15, 2010 in the San Francisco and Los Angeles Print Market editions of the USA Today newspaper.   The deadline for objecting to the settlement was May 18, 2010, and to date, no class members have objected or opted out.  Further, notice was given to the California Attorney General, and to date, the Attorney General has not objected to the settlement.  The lack of opt-outs and objections favor approving the settlement.

### 8.     Absence of Fraud or Collusion.

The court finds that the proposed settlement did not result from collusion by the parties' counsel, but from an investigation and consideration of strengths and weaknesses in the case, and arms-length negotiations between counsel.  It will provide substantially more than the maximum amount of damages that could be recovered from Resurgent, even if the Plaintiff class prevailed at trial on its claims against Resurgent.  Regarding recovery against Plains, Plains argues that it is not a "debt collector" and thus not subject to liability in this action.  The settlement amount that exceeds Resurgent's maximum exposure reflects the de minimus exposure of Plains in this case.  The manner in which counsel approached

1    settlement and arms-length negotiations favor approval of the settlement.

2            **B.    Incentive Payments to Plaintiff.**

3            Whether to award a class representative for his efforts is within a court's discretion.  *Van*

4    *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Courts may consider the

5    following criteria when determining whether to award an incentive payment: (1) the risk to the class

6    representative in commencing suit, both financial and otherwise; (2) the notoriety and personal

7    difficulties encountered by the class representative; (3) the amount of time and effort spent by the class

8    representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by

9    the class representative as a result of the litigation.  *Id.*

10           Class counsel requests an award of $2,500.00 to lead Plaintiff Catala to reimburse him for

11   activities related to his representation of the settlement class during the prosecution and settlement of

12   this action.  As part of his duties as class representative, Catala provided counsel with details of the facts

13   of this case at the inception of litigation, reviewed the complaint and discussed it with counsel before its

14   filing in December 2008.  Catala also prepared to attend the Early Neutral Evaluation conference[2] and

15   was ready to proceed with whatever discovery was necessary.  He will receive no other compensation

16   from this settlement due to the nature of the *cy pres* recovery.  Defendant has agreed to pay the

17   $2,500.00 incentive payment.  Considering the relevant criteria, the court finds the request for the

18   incentive payment to be reasonable and grants the request.

19           **C.    Attorney's Fees and Costs.**

20           The FDCPA and the Rosenthal Act contain fee shifting provisions that award payment of

21   attorney's fees to the prevailing party.  In their settlement, the parties agreed that Defendant would pay

22   Plaintiff's counsel's attorney's fees and costs in the amount of $35,000.  Plaintiff's counsel have

23   incurred actual fees and costs in the amount of $38,208.43, but seek formal court approval for only the

24   $35,000 (including $1,540.43 in costs).  Swigart Fee Decl. ¶ 25, Ex. A.

25           Courts have discretion to apply either the lodestar method or the percentage-of-the-fund method

26   to determine attorneys' fees in a common fund case.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19

27

28           [2]After initially requiring the parties to personally attend the Early Neutral Evaluation (ENE), the
     court continued the ENE to a telephonic conference with counsel only.

1   F.3d 1291, 1295 (9th Cir. 1994) (*WPPSSS*).  Whether the "fees come from a common fund *or are*

2   *otherwise paid*," the court must assure the amount of fees paid are fair and proper.  *Staton v. Boeing Co.*,

3   327 F.3d 938, 964 (9th Cir. 2003) (emphasis in original).  Where there is a fee-shifting statute, courts

4   must calculate the fee using the lodestar method.  *Id.* at 965.  To do so, the court engages in the

5   following analysis:

6           This [lodestar] method requires a court to multiply "the number of hours
            the prevailing party reasonably expended on the litigation by a reasonable
7           hourly rate."  The lodestar figure is presumptively reasonable. Adjustments
            to the lodestar amount are allowed only "if circumstances warrant," and
8           are reserved for "rare" or "exceptional" cases.  Adjustments must be
            carefully tailored, drawing from a finite pool of factors relevant to the
9           reasonableness determination and only to the extent a factor has not been
            subsumed within the lodestar calculation.  Those factors include the
10          preclusion of other employment by the attorney due to acceptance of the
            case; time limitations imposed by the client or the circumstances; the
11          amount involved and the results obtained; the "undesirability" of the case;
            the nature and length of the professional relationship with the client; and
12          awards in similar cases. Costs are not among the factors a court may
            consider in adjusting the lodestar amount.

13

14  *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, *11 (9th Cir. 2010) (citations omitted).

15          The calculation of a reasonable fee award is a two-step process.  *See Lytle v. Carl*, 382 F.3d 978,

16  988 (9th Cir. 2004).  First, the court must calculate the "lodestar figure" by taking the number of hours

17  reasonably expended on the litigation and multiplying it by a reasonable hourly rate.  *Id.*  Taken into

18  account in either the reasonable hours component or the reasonable rate component of the lodestar

19  calculation are: "(1) the novelty and complexity of the issue; (2) the special skill and experience of

20  counsel; (3) the quality of the representation; (4) the results obtained; and (5) the contingent nature of

21  the fee agreement."  During the second step the court, in its equitable discretion, adjusts this amount "on

22  the basis of other considerations."  *Id.*  The district court has great deal of discretion in determining the

23  reasonableness of the fee."  *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).  Adjustments

24  under fee-shifting statutes, however, are rare.  *See id.* at 1310-11.

25                          **1.      Reasonable Hourly Rate.**

26          A reasonable hourly rate is calculated according to the prevailing market rates in the relevant

27  community.  *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).  The community where the court

28  sits is the relevant market for determining reasonable fees.  *Gates*, 987 F.2d at 1405.

Plaintiff's firm Hyde & Swigart has an almost-exclusive practice in debt collection abuse litigation. Swigart Fee Decl. ¶ 6. It has litigated over 700 such cases in the past seven years and has been involved in over 25 published decisions, including appeals. *Id.* The hourly rates sought in this case are $355 for partners, $225-$275 for associates, and $95-$125 for support staff. These rates have recently been approved in these cases: *Dillon v. United Processing, Inc.*, Case No. 08cv1235 JM (NLS) (S.D. Cal. July 7, 2009) (*see* Ex. A) and *Basinger-Lopez v. Tracy Paul & Associates*, Case No. 08-5192 SBA (N.D. Cal. July 6, 2009) (*see* Ex. B). Swigart Fee Decl. ¶ 11. Other firms in this area have higher median billing rates than the rates requested here. Swigart Fee Decl. ¶ 22, Ex. F.[3]

The court has reviewed the Fee Declaration by Joshua Swigart and considered the skill and experience of all counsel involved from Plaintiff's firm. Their skill and experience, combined with the favorable result obtained for the Plaintiff class and the work they put in to negotiate this result, leads this court to find that the hourly rates Plaintiff's counsel billed are reasonable.

### 2. Hours Reasonably Expended.

Plaintiff provided the fee declaration of Joshua Swigart, as well as detailed time records for all the attorneys, as evidence of the hours reasonably expended on this case. Counsel has reduced their fee request from the lodestar amount of $38,208.43 to $35,000. They also say they have already eliminated any attorney and staff time that might be duplicative of work done by others.

The court has reviewed the time records, and finds that Plaintiff's counsel has made "a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours from [their] fee request." *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Along with the self-reduction of the amount of fees, the experience of counsel and the non-duplicative work, this court finds that the number of hours Plaintiff's counsel worked on this case is reasonable.

### 3. Costs.

Of the $35,000 claimed in fees, $1540.43 is to go toward the amount of costs. The court has reviewed the costs requested, and finds they are reasonable.

The court, therefore, **GRANTS** Plaintiff's motion for fees and costs for $35,000.

---

[3]*See, e.g.,* Luce. Forward, Hamilton & Scripps (San Diego), median billing rates for 2007 according to a survey by the National Law Journal: Partners--$475 and Associates--$280.

# FINAL ORDER AND JUDGMENT

1.   On January 29, 2010, this Court preliminarily approved the Class Action Settlement Agreement ("Settlement Agreement") reached between Plaintiffs and Defendants Resurgent Capital Services, LP ("Resurgent") and Plains Commerce Bank ("Plains").  At the Preliminary Approval hearing, the Court approved a form of notice for publishing to the class. Defendants, through counsel, have filed the Declaration of Alan Vasquez Re: Publication of Summary Notice with the Court stating the Notice of Class Action Settlement (the "Settlement Notice") was published as ordered by the Court in the Preliminary Approval Order.  The Court is informed through that declaration that published notice occurred as follows: The Summary Notice was published on March 15, 2010 in the San Francisco and Los Angeles Print Market editions of USA Today Newspaper.

2.   As set forth in the declaration of Class Counsel, no class member requested exclusion and no objections were filed or received.

3.   Pursuant to the Notice of Filing of Notification Required by 28 U.S.C. §1715, filed by Defendants in this matter, notice of the class settlement was sent with accompanying exhibits on October 28, 2009 to the appropriate state and federal officials.

4.   Solely for the purpose of settlement and pursuant to Fed. R. Civ. P. 23(a) and (b)(3), this court certifies the Settlement Class that it approved in the Preliminary Approval Order, as follows:

> All individuals in the State of California, during the Class Period, who were sent an envelope by Resurgent Capital Services, L.P. that was light blue in color, bearing white clouds as a design, a stamp that indicated it was "PRESORTED FIRST CLASS MAIL," and/or the words "IMMEDIATE REPLY REQUESTED," and/or were sent a collection letter from Resurgent Capital Services, L.P. bearing the representations "YOU ARE PRE-APPROVED* FOR A NEW VISA® CREDIT CARD" and "Arrangements have been made for you to obtain a Pre-Approved* Visa credit card issued through Plains Commerce Bank."

The Class Period is the period from December 24, 2007 to December 24, 2008.

If for any reason the events in paragraph 16 of this Order occur, then (a) this final approval of the Settlement Class shall be null and void, and shall not be used or referred to for any purpose in this Litigation or any other action or proceedings, and (b) all status quo ante rights of the parties, including (i) Plaintiffs' right to seek certification of this action as a class action and Defendants' right to oppose certification, and (ii) the parties' rights to assert all other defenses, rights, and positions, shall in all

respects be unaffected and preserved.

5.     On June 22, 2010, the Court held a Final Approval Hearing to which class members, including any with objections, were invited. No class members, or their counsel, appeared in person at the Final Approval Hearing to offer argument about the settlement.   No appropriate state or federal officials, as those terms are defined in 28 U.S.C. §1715, appeared at the Final Approval Hearing.  No objections having been filed, the Court took the motions under submission and did not hold oral argument.

6.     The Court finds that the provisions for notice to the class satisfy the requirements of Fed. R. Civ. P. 23 and due process. The Court has determined that, as to the Settlement Class, the Litigation meets all the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure, and that Plaintiffs and Plaintiffs' Counsel are adequate representatives of the Settlement Class.

7.     Resurgent verified to the satisfaction of Class Counsel that 1% of its net worth, as of May 31, 2009, is $25,850.  One percent (1%) of Resurgent's net worth is the maximum amount of damages allowed in an FDCPA class action under 15 U.S.C. § 1692k(a)(2)(B).

8.     The definitions and terms set forth in the Settlement Agreement filed as Exhibit A in support of the Joint Motion for Preliminary Approval are hereby incorporated in this Final Order and Judgment.

9.     Because there have been no objections filed and no requests for exclusions submitted, it is not necessary for the Court to rule on any such objections nor exclude any person requesting to be excluded from the Settlement.  The Court grants the parties' request for final approval of the Settlement Agreement. In addition to the other factors stated herein, the Court finds the Settlement Agreement to be fair, adequate and reasonable in light of the risk of establishing liability and damages, and the expense of further litigation.

10.     In certifying this action as a class action for purposes of this settlement, the Court found and finds that: (1) the members of the Class are so numerous that joinder of all class members in this action is impracticable; (2) there are questions of law and fact common to the members of the Class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Class; (4) the representative parties and their counsel have fairly and adequately protected the interests of the

1   Class; (5) the questions of law and fact common to the members of the Class predominate over any

2   questions affecting only individual members of the Class; (6) a class action was and is superior to other

3   available methods for the fair and efficient adjudication of the controversy, considering, inter alia, (a)

4   the interest of members of the Class in individually controlling the prosecution or defense of separate

5   actions, (b) the extent and nature of any litigation concerning the controversy already commenced by or

6   against members of the Class, (c) the desirability or undesirability of prosecuting the litigation of these

7   claims in this particular forum, and (d) the difficulties likely to be encountered in the management of the

8   class action.

9       11.   The Court finds that the settlement is fair and reasonable to all parties, including the

10  Plaintiffs and all members of the Settlement Class, and hereby approves the Settlement Agreement

11  submitted by the parties, including the release, and orders:

12      A.   Defendants shall pay to San Diego County Legal Aid Society, through Plaintiff's

13           counsel, as a *cy pres* distribution on behalf of the Class the total sum of $35,000,

14           which is $10,000 more than 1% of Resurgent's net worth, the maximum amount

15           of damages allowed in an FDCPA class action under 15 U.S.C. §1692K(a)(2)(B).

16      B.   Defendants will pay Plaintiff as an incentive payment $2,500, subject to Court

17           approval, for his efforts in litigating this action. Defendants shall make those

18           payments in the time period as set forth within the Settlement Agreement.

19      C.   After review and consideration of the moving papers in support of the Plaintiffs'

20           counsel's request for confirmation of the agreement between the parties for

21           payment of attorneys' fees and costs, the Court hereby approves an award of such

22               agreed-upon amount of $35,000 to Plaintiffs' counsel jointly as attorneys' fees and

23           costs for their efforts in litigating this case. Defendants shall pay those attorneys'

24           fees and costs in the time period as set forth within the Settlement Agreement.

25      12.   Plaintiffs and the members of the Class grant Defendants (as defined in the Settlement

26  Agreement) the following release, which is also set forth in the Settlement Agreement:

27      A.   Each Class Member, including the Plaintiffs, on behalf of such Class Member and of any

28           person claiming by or through such Class Member as heir, administrator, devisee,

predecessor, successor, representative of any kind, or assignee, shall be deemed to release and forever discharge Defendants (as that term is defined in the Settlement Agreement) from any and all of the Released Claims.

B.    "Released Claims" means:

For the named Plaintiffs, all claims, actions, causes of action, demands, rights, damages, costs, attorneys' fees, expenses, and compensation whatsoever arising from the envelopes, mailers and other facts alleged in the Litigation, that they or their heirs, executors, administrators, successors, assigns, and attorneys may have against Defendants for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., or the California Fair Debt Collection Practices Act (or "Rosenthal Fair Debt Collection Practices Act"), California Civil Code §§ 1788-1788.32, as of the date of this Agreement, it being the intent of Victor Catala (all of the named Plaintiffs) to release all claims against Defendants under those Acts that were alleged, or could have been alleged, in the Litigation.

For the Class, any and all claims, actions, causes of action, demands, rights, damages, costs, attorneys' fees, expenses, and compensation whatsoever arising from the envelopes, mailers and other facts alleged in the Litigation that the Class Members or the Class Members' respective heirs, executors, administrators, successors, assigns, and attorneys have and/or could assert against Defendants for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. or the California Fair Debt Collection Practices Act (or "Rosenthal Fair Debt Collection Practices Act") California Civil Code §§ 1788-1788.32. This Agreement and the settlement embodied herein shall not release any debts owed by Plaintiffs or the Class, nor shall this settlement operate as an accord and satisfaction of such debts. Each Class Member is permanently enjoined and barred from instituting or maintaining any action for the Released Claims against Defendants, whether by complaint, counterclaim, defense or otherwise, in any state or federal court, or in any agency or other authority or forum wherever located.

13.    The Court finds the Settlement Agreement is fair and made in good faith.

14

14.     The Court dismisses the claims of Plaintiffs and the Class Members against Defendants with prejudice and without costs (other than what has been provided for in the Settlement Agreement and in this Final Order and Judgment) and this dismissal shall, to the maximum extent permitted by law, operate as res judicata and collateral estoppel so as to bar any future suits under those provisions so long as they arise from or are related to the subject matter of this lawsuit during the Class Period.

15.     The parties sent notice required by 28 U.S.C. §1715(b) to the appropriate state and federal officials, as defined by 28 U.S.C. §1715(a). This Court is entering this Final Judgment more than ninety days after such officials were served, as is required by 28 U.S.C. §1715(d).

16.     In the event that (i) the Settlement Agreement is terminated pursuant to its terms, or (ii) the Settlement Agreement, Preliminary Approval Order and Final Order and Judgment are reversed, vacated or modified in any material respect by this or any other court, then (a) all orders entered pursuant to the Settlement Agreement shall be vacated, including this Order; (b) the Litigation shall proceed as though a Settlement Agreement had never been reached; (c) no reference to the prior Settlement Agreement, or any documents related thereto, shall be made for any purpose; (d) nothing in this Order shall be construed or used as an admission, concession or declaration by or against Resurgent, or any fault, wrongdoing, breach or liability; (e) this Order shall not be construed by or against the Plaintiffs or Class Members that their claims lack merit or that the relief requested in this Litigation is inappropriate, improper or unavailable, or as a waiver by any party of any defenses it may have; (f) this Order shall not be construed or used to show that certification of one or more classes would or would not be appropriate if this Litigation was to be litigated rather than settled; provided, however, that if the parties to the Settlement Agreement agree to appeal jointly an adverse ruling and the Settlement Agreement and Final Order and Judgment are upheld on appeal in all material respects, then the Settlement Agreement and Final Order and Judgment shall be given full force and effect. In the event of (i) or (ii) in this paragraph, all parties reserve all of their rights existing prior to the execution of the Settlement Agreement, and the doctrines of res judicata and collateral estoppel shall not be applied.

17.     Neither the Settlement Agreement, this Final Order and Judgment, nor any of their provisions, nor any of the documents (including but not limited to drafts of the Settlement Agreement, the Preliminary Approval Order or the Final Order and Judgment), negotiations, or proceedings relating

08CV2401 NLS

in any way to the Settlement, shall be construed as or deemed to be evidence of an admission or concession of any kind or any person, and shall not be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except in an action brought to enforce its terms or except as may be required by law or court order.

18.     The Court retains jurisdiction over all parties to this action for purposes of the interpretation, enforcement and implementation of the Settlement Agreement and this Final Order and Judgment.

19.     **The Clerk of Court is hereby expressly directed** to enter Judgment in accordance with the terms of this Order and close the file on this case.

**IT IS SO ORDERED.**

DATED:  June 22, 2010

_Nita L. Stormes_
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court

16

08CV2401 NLS